IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MELVIN GOODWEATHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-06 (RDA/IDD) |
| | ) | |
| NEIL PAREKH, NITIN MEHTA, DILIP | ) | |
| PAREKH, CENTENNIAL SURETY | ) | |
| ASSOCIATES, INC., and MICHAEL | ) | |
| SCHENDEL, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants Nitin Mehta, Neil Parekh, and Centennial Surety Associates, Inc., and Michael Schendel (collectively, "Defendants") Motions to Dismiss the Amended Complaint ("Motions to Dismiss").  Dkt. Nos. 42; 44; 47.  These matters are now fully briefed and ripe for resolution.

Considering the Second Amended Complaint (Dkt. 41)[1], the Motions to Dismiss, Defendants' Memoranda in Support (Dkt. Nos. 43; 45; 48), Plaintiff Melvin Goodweather's ("Plaintiff") Oppositions to the Motions (Dkt. Nos. 51; 52; 53), Defendants' Replies (Dkt. Nos. 54; 56), and oral argument on the Motions to Dismiss (Dkt. 57), it is hereby ORDERED that Defendant Neil Parekh's Motion to Dismiss (Dkt. 47) is DENIED and Defendants Nitin Mehta, Centennial Surety Associates, Inc., and Michael Schendel's Motions to Dismiss (Dkt. Nos. 42; 44) are GRANTED for the reasons that follow.

---

[1] Although Plaintiff captioned his filing as a "First Amended Complaint," this pleading is, in fact, Plaintiff's Second Amended Complaint.  *See* Dkt. 1-1 (Complaint); Dkt. 22 (First Amended Complaint); Dkt. 41 (Second Amended Complaint).

## I. BACKGROUND

The facts as alleged in Plaintiff's Second Amended Complaint are taken as true at the motion to dismiss stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff alleges that in or around December of 2011, he and Defendant Neil Parekh discussed forming a construction company to bid on United States Government contracts.  Dkt. 41, ¶ 21.  Plaintiff, who is a service-disabled veteran and served in the Korean War, describes that he and Parekh specifically discussed forming a service-disabled veteran owned small business ("SDVOSB"), as the Government sets aside construction contracts that can only be awarded to such entities.  *Id.*

Interested in pursuing this venture, Plaintiff provided documentation of his disability status to Parekh.  *Id.* ¶ 22.  Then, Parekh formed Citibuilders Solutions Group, LLC ("Citibuilders").  *Id.* ¶ 23.[2]  The United States Department of Veterans Affairs' ("VA") Center for Verification and Evaluation must verify any company receiving VA business as a service-disabled veteran owned small business, which qualifies a company to bid for and obtain the VA's set-aside contracts for such businesses.  *Id.* ¶¶ 44, 46.  After receiving Citibuilders' application for this special designation, the VA formally granted the new entity SDVOSB status.  *Id.* ¶ 50.

A federal statute, the Miller Act, requires surety bonding for government construction contracts.  *Id.* ¶ 74.  Under the Miller Act, contractors must obtain bid bonds, performance bonds, and payment bonds.  *Id.*  Performance bonds issued for the Government's protection obligate the surety to ensure the contract will be completed.  40 U.S.C. § 3131(b)(1) (2019).  A surety's

---

[2] Defendant Parekh also operated two other similar businesses—CSG, LLC and KCGI. Inc.  *Id.* ¶ 54.

payment bond guarantees that all who supply labor and materials for completion of the contract work will be paid. *Id.* § 3131(b)(2).

To meet its Miller Act obligations, Citibuilders required bonds for its government construction contracts. *Id.* ¶ 75. Defendant Centennial was the agent of surety bonding companies, issuing bonds that Citibuilders needed to bid on certain government contracts. *Id.* ¶¶ 76, 83. Defendant Schendel served as the owner and president of Centennial. *Id.* ¶ 10.

Although Defendants Centennial and Schendel never directly communicated with Mr. Goodweather, Plaintiff claims that they understood Parekh maintained an ownership interest in Citibuilders. *Id.* ¶¶ 81, 89. A surety company—AEGIS—provided bonding to Citibuilders. *Id.* ¶ 91. AEGIS required Plaintiff to personally indemnify AEGIS before the surety would agree to issue a bond to Citibuilders. *Id.* ¶ 92. In keeping with that requirement, Plaintiff executed an indemnity agreement with AEGIS in October of 2012. *Id.* ¶ 98. He signed this Agreement for Citibuilders as its Managing Member. *See* Dkt. 43-1. In an effort to convince Plaintiff to enter the AEGIS agreement, Defendant Parekh created a separate Indemnity Agreement with Defendant Mehta. Dkt. 41, ¶¶ 93, 98.

Beginning in 2012, Citibuilders started bidding on and securing government construction contracts awarded by the VA and the Small Business Administration. *Id.* ¶ 63. Plaintiff did not know Parekh had begun operating Citibuilders or bidding on SDVOSB contracts at that time. *Id.* ¶¶ 27-28. In fact, Plaintiff alleges that when he asked Defendant Parekh for status updates on Citibuilders, Parekh told him the company had not yet begun bidding on projects. *Id.* ¶ 28. Plaintiff acknowledges that he lacked the finances, experience, or knowledge necessary to assemble bids or qualify for SDVOSB set-aside contracts. *Id.* ¶ 41. Citibuilders bid on and

received these contracts even though the company did not meet SDVOSB minimum requirements. *Id.* ¶¶ 41, 43.

Significantly, Citibuilders did not satisfy the program's criteria.  Although Citibuilders' contract bids identified Plaintiff, a service-disabled veteran, as the company's sole owner, he neither controlled nor exercised ownership over the entity—a requirement under SDVOSB regulations. *Id.* ¶¶ 34, 36.  The VA's Center for Verification and Evaluation did not communicate with Plaintiff during its verification process.  *Id.* ¶ 50.  Furthermore, Plaintiff alleges that Parekh submitted false documents to the VA.  *Id.* ¶ 51.

In the Second Amended Complaint, Plaintiff alleges that Parekh prepared and controlled submission of Citibuilders' contract solicitations, which contained materially false statements, through wire communications.  *Id.* ¶¶ 55-56.  Plaintiff further represents that Defendant Neil Parekh, and to some extent his father, Defendant Dilip Parekh, exercised dominion and control over all aspects of Citibuilders' finances and operations.  *Id.* ¶¶ 57-62.  Plaintiff maintains that Citibuilders' allegedly fraudulent contracting activity could not have been carried out without the bonding Centennial obtained.  *Id.* ¶ 90.

In an effort to assume a more active role in the company, Plaintiff claims that he sought out additional information from Parekh.  *Id.* ¶ 102.  But Parekh rebuffed these requests; Plaintiff sets forth that Parekh was either non-responsive or provided false information.  *Id.*  Finally, in August of 2014, Plaintiff discussed with Parekh the possibility of being removed from the AEGIS indemnity agreement.  *Id.* ¶ 107.

In November of 2014, Plaintiff received a cure notice from the VA regarding a Citibuilders contract.  *Id.* ¶ 109.  He also received a notice from AEGIS, the surety company.  *Id.*  On July 18, 2015, Plaintiff was served with a Complaint in a federal *qui tam* action, at which point he

discovered Defendants' alleged conduct.  *Id.* ¶¶ 30, 146.  It was not until then, Plaintiff asserts, that he learned of multiple alleged fraudulent actions taken by Defendant Neil Parekh—actions that harmed Plaintiff by causing him to be named as a defendant in the *qui tam* suit.  *Id.* ¶¶ 149-50.

Defendants removed this action to this Court on January 3, 2020.  Dkt. 1.  Plaintiff filed an Amended Complaint on January 30, 2020 (Dkt. 22), which Defendants moved to dismiss.  Dkt. Nos. 23; 26; 29.  On September 18, 2020, the Court granted in part and denied in part Defendants' motions to dismiss, dismissing each count except Count V but granting Plaintiff leave to file a Second Amended Complaint as to Counts I and II—the substantive RICO and RICO conspiracy claims.  Dkt. 40.  Plaintiff filed a Second Amended Complaint on October 9, 2020.  Dkt. 41. Defendants then moved to dismiss the Second Amended Complaint in three separate motions.  Dkt. Nos. 42; 44; 47.  On May 19, 2021, the Court heard oral argument on the Motions to Dismiss. Dkt. 57.  These matters are now ripe for review.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint.  *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011).  "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint fail to "state a claim that is plausible on its face.'"  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S at 555, 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

## III. ANALYSIS

In Count I, Plaintiff alleges Defendants violated the federal RICO statute, 18 U.S.C. § 1962(c). Dkt. 41 ¶¶ 158-74. A distinctive statute with roots in criminal law, RICO imposes civil liability on "any person" "employed by or associated with such an enterprise" who "conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity.'" *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232-33 (1989). The statute may be enforced criminally or civilly, *see* 18 U.S.C. §§ 1963, 1964, and those punished for civil RICO violations are liable for treble damages. *Id.* § 1964(c). Although federal courts "read the terms of the statute 'liberally' in order to 'effectuate its remedial purposes,'" *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Boyle v. United States*, 556 U.S. 938, 944 (2009)), courts also take care "to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions." *Menasco, Inc. v. Wasserman*, 866 F.2d 681, 683 (4th Cir. 1989); *see also GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) ("RICO liability is reserved for 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'") (quoting *Menasco*, 866 F.2d at 684).

6

To plausibly allege a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must plead conduct of an enterprise through a pattern of predicate acts constituting racketeering activity that caused injury to a person's business or property.  *See Sedima, S.R.P.L v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  In this regard, this Court must examine the allegations contained within the Second Amended Complaint to determine whether Plaintiff has pleaded facts sufficient to state a claim in support of a civil RICO violation against any Defendant.

In Count II, Plaintiff also brings a RICO conspiracy claim against all Defendants under 18 U.S.C. § 1962(d).  Dkt. 41, ¶¶ 175-80.  Although Counts III and IV of the Second Amended Complaint include claims for fraud or constructive fraud and unjust enrichment, *see id.* ¶¶ 181-94, Plaintiff has clarified that he is withdrawing those claims consistent with the Court's September 18, 2020 Order.  *See* Dkt. 53, 18.  Lastly, Plaintiff brings a state-law claim for Unauthorized Use of Name of Any Person.  *See* Dkt. ¶¶ 41, 195-99 (citing Va. Code Ann. § 8.01-40(A)).

Defendants argue dismissal is warranted because Plaintiff has failed to state a claim upon which relief may be granted.  Although Defendants make similar arguments for dismissal, their separate Motions identify how each party is differently situated with respect to Plaintiff's allegations.  The Court addresses each Motion to Dismiss in turn.

### A. Defendant Neil Parekh's Motion to Dismiss

Defendant Neil Parekh moves to dismiss Counts I and II, arguing the Second Amended Complaint fails to cure the deficiencies the Court identified in its prior dismissal order.  *See* Dkt. 48 at 1.  According to Parekh, the RICO counts alleged against him in the Second Amended Complaint must be dismissed on substantially similar basis.  Parekh explains that the same grounds the Court cited in dismissing the First Amended Complaint justify dismissing Plaintiff's latest complaint.  *See id.* at 4-10.

For his part, Plaintiff counters that Parekh's conduct falls within the sweep of the RICO statute; disputes Parekh's argument suggesting that every RICO enterprise must pose a continuing threat; asserts that he pleads wire fraud with sufficient particularity as required for claims sounding in fraud; and states that he has RICO standing.  *See* Dkt. 53 at 8-18.  In his Opposition, Plaintiff also explains that he is withdrawing the claims alleged in Counts III and IV of his Second Amended Complaint consistent with this Court's September 18, 2020 Order.  *See id.* at 18.

### 1. RICO Standing

First, the Court finds that Plaintiff has established RICO standing to assert claims against Defendant Neil Parekh.  The Fourth Circuit has found that the "by reason of" language in 18 U.S.C. § 1964(c) "creates certain 'standing' requirements before one can attempt to state a claim under 18 U.S.C. § 1962."  *Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437, 444 (E.D. Va.2006) (citing *Brandenburg v. Seidel*, 859 F.2d 1179, 1188 n.10 (4th Cir. 1988)).  To establish RICO standing, "(1) the plaintiff must have detrimentally relied on the predicate acts of racketeering activity; (2) the predicate acts must be the proximate cause of the injury to the plaintiff; and (3) the plaintiff must suffer actual injury."  *Id.* (citing *Brandenburg*, 859 F.2d at 1188 n.10).  Applying this statutory requirement to Plaintiff's Second Amended Complaint, the Court finds that Plaintiff has amended his complaint to sufficiently allege he detrimentally relied upon certain predicate acts, suffered an actual injury within the meaning of the statute, and that Defendant Parekh's alleged RICO violations proximately caused any injury Plaintiff suffered.

The Court's conclusion is directed by the statutory "language of § 1964(c), which confers RICO standing on 'any person injured in his business or property,' not any person who can quantify the amount of the injury."  *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001).  In that case, the Fourth Circuit observed that "[i]f the evidence

indicates that a party paid value for a good or service, this fact is a more reliable indicator that the service actually had value to the party than the post hoc intuition of a court as to the good or service's value." *Id.*  Whatever may be said of the ultimate value of the SDVOSB-awarded contracts, the conduct of both Plaintiff and Defendant Parekh reveals they labored under the assumption that Citibuilders would, in fact, be a valuable enterprise.  *See, e.g.*, Dkt. 41, ¶¶ 48-54, 63.  Plaintiff further alleges that predicate acts of wire fraud proximately caused his injury, particularly monetary harm stemming from entering a high-end vehicle lease.  *Id.* ¶ 174.  Under Federal Rule of Civil Procedure 12(b)(6), this Court must accept Plaintiff's well-pleaded allegations as true.  *See Iqbal*, 556 U.S. at 678.  Accordingly, the Court finds that Plaintiff has alleged sufficient facts to establish RICO standing as to Defendant Neil Parekh.

### 2. RICO Claim in violation of 18 U.S.C. § 1962(c)

Next, the Court must determine whether Plaintiff has sufficiently stated a claim under Section 1962.  Again, to plead a Section 1962 claim against Defendant Parekh, Plaintiff must plausibly allege that he conducted the affairs of an enterprise through a pattern of predicate acts constituting racketeering activity that caused injury to Plaintiff's business or property.  *See Sedima*, 473 U.S. at 496.  For the reasons that follow, the facts Plaintiff sets forth in the Second Amended Complaint are sufficient to state a plausible claim as to Defendant Parekh.

In his Second Amended Complaint, Plaintiff buttresses his allegations with specific factual content the First Amended Complaint lacked.  For example, the Second Amended Complaint identifies e-mail communications between Defendant Parekh and Plaintiff that the earlier complaint never mentioned.  Dkt. 41, ¶ 107-37.  These emails document Defendant Parekh's alleged scheme to defraud, setting forth specific instances of purported fraudulent inducement, misrepresentations, and false statements.  *See id.*  Plaintiff's new pleading also describes alleged

9

monetary harm, detailing a lease for a Lexus—obtained by Citibuilders—for which Plaintiff had to foot the bill.  Dkt. 41, ¶ 157.  Likewise, the Second Amended Complaint includes new allegations of Plaintiff's lost business profits.  *Id.*

These new factual enhancements are "enough to raise a right to relief above the speculative level" as to Defendant Parekh.  *See Twombly*, 550 U.S. at 555.  The facts as alleged in the Second Amended Complaint "state a claim that is plausible on its face" at the pleading stage of this RICO action, *id.* at 570, when courts must view the facts in the light most favorable to the plaintiff. Accepting the factual content of the Second Amended Complaint as true, the allegations against Defendant Parekh "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'"  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (*Twombly*, 550 U.S. at 570).

As for Defendant Parekh's argument that Plaintiff's alleged lost profits is a merely speculative allegation, *see* Dkt. 48 at 8, this Court distinguishes between speculative allegations and allegations referencing specific factual content that remains solely in a defendant' possession. To be sure, theoretical allegations are insufficient to give a claim facial plausibility on a Rule 12(b)(6) motion.  *Twombly*, 550 U.S. at 570.  But a claim that is bolstered by information and "documents in support of the facts at issue" that fall "within [a] defendant's 'possession or control'" is not destined for dismissal at the pleading stage.  *Fedynich v. Lozano*, No. 3:20-cv-260, 2021 WL 710368, at *14 (E.D. Va. Feb. 23, 2021) (quoting *J.J. Crewe & Son, Inc. Profit Sharing Plan v. Talbot*, No. 11-cv-2871, 2012 WL 1994778, at *9 (D. Md. June 1, 2012)).  As this Court has observed, a plaintiff "would not have information" and would not be expected to have information if the relevant "evidence remains solely" in the possession or control of a defendant;

therefore, denying a motion to dismiss is appropriate in such a scenario.  *See Fedynich*, 2021 WL 710368, at *14.

Here, although Plaintiff does not provide the specific amount of lost business profits he allegedly suffered as a result of Defendant Parekh's conduct, there is a "reasonable expectation that discovery will reveal evidence" relating to that allegation.  *Awappa*, 615 at 317.  The Second Amended Complaint sets forth that Citibuilders was awarded nearly $6 million dollars in SDVOSB contracts, none of which benefitted Plaintiff.  Dkt. 41, ¶ 63.  Consequently, this Court declines to dismiss Plaintiff's claims against Defendant Parekh on the basis that Plaintiff's allegations of lost business profits are too speculative at this stage of the litigation.

Apart from RICO standing, Defendant Parekh makes three other arguments in favor of dismissing the Second Amended Complaint, all rooted in the reasoning of the Court's Order dismissing the First Amended Complaint.  *See* Dkt. 48, 4-8.  First, he argues the alleged conduct's scope and persistence poses no "special threat" to societal well-being.  *Id.* at 5-6.  Second, he contends there is no threat of "continued criminal activity."  *Id.* at 6.  And third, he asserts Plaintiff fails to plead predicate acts with particularity.  *Id.* at 7-8.  Considering the allegations in the Second Amended Complaint, none of these arguments succeed.

### a. Pattern of Racketeering Activity

Defendant Parekh's "special threat" argument is drawn from the continuity element of RICO's pattern requirement.  *See Williams v. Equity Holding Corp.*, 498 F. Supp. 2d 831, 843 (E.D. Va. 2007) (stating that the continuity "inquiry's focus is on whether the related predicate acts indicate 'ongoing criminal activity of sufficient scope and persistence to pose a special threat to social well-being'") (quoting *Myers. v. Finkle*, 758 F. Supp. 1102, 1112 (E.D. Va. 1990)).  Therefore, the Court addresses this contention and Defendant Parekh's continuity argument

together.  A civil RICO plaintiff may allege either a close-ended or an open-ended scheme.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989) ("'Continuity' is both a closed- and open-ended concept[.]").  In his Opposition, Plaintiff makes clear that he "has alleged a close-ended scheme, rather than an open-ended scheme."  Dkt. 53 at 10.  In a case where a close-ended pattern of racketeering activity is alleged, a RICO plaintiff "may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time."  *H.J. Inc.*, 492 U.S. at 242.

In the civil RICO context, a "'pattern' of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts."  *Walters v. McMahen*, 684 F.3d 435, 440 (4th Cir. 2012) (quoting *Sedima*, 473 U.S. at 496 n.14).  While a scheme involving predicate acts "extending over a few weeks or months and threatening no future criminal conduct" does not support civil RICO liability, determining "[w]hether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case."  *H.J. Inc.*, 492 U.S. at 242.

Here, Plaintiff argues that the alleged RICO enterprise extending from August 24, 2010, until at least June 30, 2014, a period of approximately four years.  Plaintiff alleges 27 purported instances of racketeering activity during this time period, plus "additional predicate acts of wire fraud" through Defendant Parekh's misleading emails.  Dkt. 53, 11 (citing Dkt. 41, ¶¶ 104-148).  Defendant Parekh disputes this timeline, maintaining that the most expansive reading of Plaintiff's allegations could still only support a maximum two-year period of racketeering activity, which by itself would not establish close-ended continuity.  *See* Dkt. 55 at 4 (citing *United States v. Pinson*, 860 F.3d 152, 163) (4th Cir. 2017).  Of course, certain "fragmented schemes" may not support an ultimate finding of RICO liability.  *See Pinson*, 860 F.3d at 163.  But the relatedness of the

purported acts alleged in the Second Amended Complaint and their regular occurrence "extending over a substantial period of time" demonstrate close-ended continuity sufficient to establish a pattern of racketeering activity at this phase of the litigation, where the Court must accept all well-pleaded allegations as true. *See H.J., Inc.*, 492 U.S. at 242; *Twombly*, 550 U.S. at 555.

### b. Heighted Fraud Pleading Standard

Finally, Defendant Parekh argues that Plaintiff's RICO claim fails because the Second Amended Complaint does not satisfy the heightened pleading requirement for fraud claims demanded by Federal Rule of Civil Procedure 9(b). Under Rule 9(b), a plaintiff who brings a claim sounding in fraud must allege the "who, what, when, where and how of the alleged fraud." *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014). An automatic invocation of Rule 9(b) does not make dismissal appropriate, however. Indeed,

> [a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Having reviewed the pleading, this Court can discern (1) the timeline of the alleged fraud, including dates each contract was awarded; (2) that the appraisal was undertaken at McCauley's home, to which Ocean Bank sent an appraiser; (3) that Defendant Parekh allegedly made the false and misleading statements; and (4) as a result of the misrepresentation, Plaintiff agreed to provide, among other financial benefits, his SDVOSB status to Citibuilders. Dkt. 41. These allegations comply with this Court's requirement that, to prevail against a motion to dismiss, a plaintiff "couple[]" fraud allegations "with a recitation of an 'outline [of] the alleged scheme to defraud alleged scheme to defraud them of their home[,] . . . a time frame for the scheme, specific persons, entities, and times connected with the fraud, and the general contents of the alleged fraudulent

13

communications[.]'" *Borg v. Warren*, No. 3:21-cv-12, 2021 WL 2657005, at *12 (E.D. Va. June 28, 2021) (quoting *Williams*, 498 F. Supp. 2d at 842).

As Plaintiff has made the necessary showing such that Defendant Parekh "has been made aware of the particular circumstances for which [he] will have to prepare a defense at trial," his is not the sort of frivolous action "Rule 9(b) is designed to avert." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559-60 (4th Cir. 2013) (citation omitted). Therefore, the Court declines to dismiss Plaintiff's RICO claim as to Defendant Parekh at this stage. *See id.* at 560 ("In concluding that [the plaintiff] properly states a claim for fraud, we make no judgment as to the merits of her argument, but simply determine that it would be incorrect to prevent her from pursuing her claim in district court at this stage.").

### 3. RICO Conspiracy

Plaintiff also alleges Defendant Parekh engaged in a RICO conspiracy in violation of 18 U.S.C. § 1962(d). Dkt. 41, ¶¶ 175-80. "[T]o prove a RICO conspiracy, two things must be established: '(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense.'" *Solomon v. Am. Web Loan*, No. 4:17-cv-145, 2019 WL 1320790, at *11 (E.D. Va. Mar. 22, 2019) (quoting *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)). A RICO conspiracy may be shown by either direct or circumstantial evidence. *See Solomon*, 2019 WL 1320790, at *11 ("Proof of an agreement to commit the overall objective of the RICO offense "may be established solely by circumstantial evidence."); *see also United States v. Baker*, 598 F. App'x 165, 170 (4th Cir. 2015) (holding that "a single conspiracy may be shown by direct or circumstantial evidence that a defendant knew its essential object by demonstrating a tacit or mutual understanding between the defendants and other conspirators even where the connection is slight").

In the Second Amended Complaint, Plaintiff has pleaded facts sufficient to support a reasonable inference that Defendant Parekh agreed with co-conspirators to commit an offense that falls within the sweep of the RICO statute. In addition, Plaintiff has plausibly alleged that Defendant Parekh knew of and agreed to the overall objective of the RICO offense—to fraudulently obtain SDVOSB set-aside contracts. His RICO conspiracy claim as to Defendant Parekh therefore survives the Rule 12(b)(6) stage.

B. Defendant Nitin Mehta's Motion to Dismiss

Defendant Nitin Mehta has moved to dismiss all counts alleged against him in the Second Amended Complaint. Dkt. 44. Therein, Plaintiff pleads that Defendant Nitin Mehta is the uncle of Defendant Neil Parekh. Dkt. 41, ¶ 5. Mehta agreed to indemnify Plaintiff for a $500,000 sum for which Plaintiff agreed, in turn, to indemnify AEGIS—the surety company. Dkt. 41, ¶¶ 92-93. In exchange for Defendant Mehta posting a letter of credit and indemnifying Plaintiff, the Indemnity Agreement afforded Mehta a 10% interest in Citibuilders' profits over a three-year period. *Id.* 94. Under the parties' agreement, "Mehta was to deposit $250,000 into a bank account" in Plaintiff's name and for his sole benefit as security until Mehta posted a $500,000 letter of credit. *Id.* ¶ 95. Instead, Plaintiff alleges, Defendant Mehta wired $250,000 into Citibuilders' corporate account with Capital One Bank, N.A. on July 31, 2012. *Id.* ¶¶ 96-97. Then, in three separate payments over a ten-month period, Defendant Parekh repaid Defendant Mehta the $250,000 Defendant Mehta had deposited into the Capital One account. *Id.* ¶ 99. Plaintiff alleges he did not know about or authorize these repayments to Defendant Mehta. *Id.* According to Plaintiff, Defendant Mehta "never intended to post" a letter of credit and instead made this promise, with Defendant Parekh, "to induce [Plaintiff] into signing the Indemnity Agreement." *Id.* ¶ 100. As a result, Defendant Mehta "completely deprived Plaintiff of his rights" to the letter of credit. *Id.*

15

When Plaintiff attempted to disassociate with Citibuilders, Defendants Parekh and Mehta purportedly told him in October of 2012 that Defendant Mehta would begin the verification process to confirm his own service-disabled veteran status so that Mehta could replace Plaintiff within Citibuilders. *Id.* ¶ 104. They asked Plaintiff to "continue supporting Citibuilders during this process." *Id.* Plaintiff alleges that Defendants Parekh and Mehta failed to tell him that Defendant Mehta was not, in fact, a service-disabled veteran, suggesting that they knew he would be ineligible to replace Plaintiff and sustain Citibuilders' SDVOSB status. *Id.* ¶ 105. Unaware of that omission, Plaintiff relied on Defendants Parekh's and Mehta's statements regarding Mehta's veteran status. *Id.* ¶ 106.

Taking all of these allegations as true, Plaintiff does not allege a single racketeering act by Defendant Mehta. Instead, all the predicate acts identified in the Second Amended Complaint are attributable to Defendant Parekh, not Defendant Mehta. *See id.* ¶¶ 1-101, 169. Under the "operation or management" test courts use to determine whether a defendant conducted or participated in a RICO scheme, a RICO enterprise may be "'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

But whether someone directed the affairs of a RICO enterprise requires a more exacting showing under 18 U.S.C. § 1962(c). To be liable, "an individual must be a 'direct participant' in the affairs of the enterprise and not merely 'acting in an advisory professional capacity (even if in a knowingly fraudulent way)." *Hengle v. Asner*, 433 F. Supp. 3d 825, 897 (E.D. Va. 2020) (quoting *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 633 F. Supp. 2d 214, 230 (E.D. Va. 2008)). There is no plausible reading of the allegations that would suggest Defendant Mehta was a direct participant in the affairs of the enterprise. Similarly, there is no

allegation that suggests Defendant Mehta was anything more than a passive participant who merely acted in an ordinary professional capacity in indemnifying Plaintiff.  Aside from Plaintiff's generalized allegation that Defendant Mehta breached an indemnification agreement and made a gratuitous promise that Mehta would attempt to substitute himself for Plaintiff on the AEGIS bond, the Second Amended Complaint focuses chiefly on the purported actions of Defendant Parekh.  *See generally* Dkt. 41.

In addition, Plaintiff does not state "with particularity the circumstances constituting fraud" in his RICO claim against Defendant Mehta.  *See Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  The heightened pleading standard under Federal Rule of Civil Procedure 9(b) does not allow for the sort of generalized pleading the Second Amended Complaint contains as to Defendant Mehta.  Rather, with respect to each named defendant, a civil RICO plaintiff alleging predicate acts of mail or wire fraud must state the "contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent." *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 185 (2nd Cir. 2008).  The Second Amended Complaint suffers the same defects as Plaintiff's previous complaint with respect to Defendant Mehta, as it fails to set forth which, if any, predicate acts in which he was involved.

Accordingly, Count I must be dismissed as to Defendant Mehta.  And because there can be no liability for a RICO conspiracy where there is no basis for finding a substantive RICO violation, *see Parker*, 247 F.3d at 551 n.2, Count II must also be dismissed as to Defendant Mehta.  Lastly, to the extent Defendant Mehta is named in Count V, that state-law claim is also dismissed against him.[3]  Plaintiff cannot state a claim against Defendant Mehta under Va. Code. Ann. § 8.01-40(A)

---

[3] In Count V, Plaintiff alleges conduct against "Defendants" generally, *see* Dkt. 41, ¶¶ 195-99, but the specific acts alleged in this section of the Second Amended Complaint are attributed to Defendant Parekh.

because there is no allegation in the Second Amended Complaint that Mehta used Plaintiff's name in any capacity. All three counts are dismissed with prejudice and without leave to amend as to Defendant Mehta.

   C. Defendants Centennial Surety Associates' and Schendel's Motion to Dismiss

   Defendants Centennial Surety Associates, Inc., and Michael Schendel have also jointly moved to dismiss all claims alleged against them in the Second Amended Complaint. Dkt. 42. Centennial is a Maryland-based business that provides bonding services, and Schendel was the president and owner of Centennial at all times relevant to Plaintiff's allegations. Dkt. 41, ¶¶ 9-10. A surety company, AEGIS, issued bonds necessary for the government contracts Citibuilders bid on and obtained; even so, Plaintiff alleges Citbuilders' fraudulent submissions would not have been possible without the bonding services Centennial provided. *Id.* ¶ 90. According to Plaintiff, Defendant Centennial must have known that Defendant Parekh was functionally in control of Citibuilders. *Id.* ¶ 80.

   Based on several factors—including Defendant Schendel's relationship with Defendant Parekh, Schendel's and Centennial's review of the bids Parekh prepared, and certain "company resolutions" acknowledging that Defendant Parekh was a common owner of Citibuilders and several other entities—Plaintiff alleges Centennial and Schendel "knew the details" regarding Citibuilders' failure to meet the SDVOSB set-aside contract requirements and that Citibuilders' bid submissions were fraudulent. *Id.* ¶¶ 82-89. Defendants Centennial and Schendel never communicated directly with Plaintiff; according to Plaintiff, though, they caused the fraudulent bid submissions to be awarded by issuing bid bonds and performance bonds to benefit Citibuilders. *Id.* ¶¶ 81, 90.

Taking Plaintiff's allegations against Defendants Centennial and Schendel as true, as it must at the motion to dismiss stage, the Court concludes that Plaintiff fails to state a claim upon which relief may be granted against Defendants Centennial Surety Associates and Schendel. Plaintiff's theory of RICO liability as to Defendants Centennial and Schendel is an expansive one that finds no support in the governing case law.  Although Plaintiff argues that "a RICO enterprise should be broadly defined" and that Defendants Schendel and Centennial are appropriately understood as members of "the liberal RICO [e]nterprise requirement" established by *Boyle*, 556 U.S. at 944, Plaintiff misinterprets the operation or management requirement necessary to sustaining a RICO claim against a defendant.  Dkt. 51 at 9-10.  To "conduct" the affairs of an enterprise within the meaning of section 1962(c) "requires an element of direction."  *Reves*, 507 U.S. at 179.  Simply put, a defendant must operate or manage the alleged enterprise.  This principle flows from RICO's requirement that liability under the statute "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs."  *Id.* (quoting 18 U.S.C. 1962(c)).

With respect to the allegedly fraudulent contracts Citibuilders bid on and obtained, Plaintiff alleges that Centennial and Schendel knew the details of the proposals and that the contracts could not have been awarded without their bonding services.  Assuming this much is true, that activity does not amount to directing the affairs of a RICO enterprise.  Providing bonding services to an alleged association-in-fact enterprise is not equivalent to operating or managing that enterprise.  In the Second Amended Complaint, Plaintiff places Defendant Parekh, not Defendants Centennial or Schendel, squarely at the center of the alleged enterprise.  Plaintiff urges, in numerous allegations, that Defendant Parekh controlled every part of Citibuilders' operations and its contracting work.  *See, e.g.*, Dkt. 41, ¶¶ 26, 28, 37, 42, 51, 55, 57-60, 62, 149.  Centennial's role, on the other hand,

was to broker bonding for Citibuilders and issue bonds in its capacity as agent for the surety. Providing services that benefit an enterprise, even if those services are important and indispensable, is not sufficient to support RICO liability because it does not amount to operation or management. *See, e.g.*, *Univ. of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538-39 (3d Cir. 1993); *Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997) ("Furnishing a client with ordinary professional assistance, even when the client happens to be a RICO enterprise, will not normally rise to the level of participation sufficient to satisfy the Supreme Court's pronouncements in *Reves*.").

Plaintiff's allegations make plain that Defendant Neil Parekh and his father, Defendant Dilip Parekh, controlled Citibuilders' operations. *See generally* Dkt. 41. As for Defendants Centennial and Schendel, the SDVOSB contract bids "made by Parekh" required participation by Centennial and Mr. Schendel. *Id.* ¶ 166. But their participation, in issuing bonds, merely provided services to the alleged enterprise. These services are not tantamount to managing the enterprise. For these reasons, taking all the facts alleged in the Second Amended Complaint as true, Plaintiff does not state a valid claim for relief against Defendants Centennial and Schendel under 18 U.S.C. 1962(c). Therefore, Count I must be dismissed as to Defendants Centennial and Schendel.

As there is no liability for a RICO conspiracy where there is no basis for finding a substantive RICO violation, *see Parker*, 247 F.3d at 551 n.2, the Court also dismisses Count II as to Defendants Centennial and Schendel. And if Count V is read to state a claim against Defendants Schendel and Centennial, that claim also cannot proceed because there is no allegation in the Second Amended Complaint that either Centennial or Schendel used Plaintiff's name in any capacity. All three counts are dismissed with prejudice and without leave to amend as to Defendants Centennial and Schendel.

IV. CONCLUSION

For these reasons, Defendant Neil Parekh's Motion to Dismiss (Dkt. 47) is DENIED. The Motions to Dismiss filed by Defendants Nitin Mehta, Centennial Surety Associates, and Michael Schendel (Dkt. Nos. 42; 44) are GRANTED.   The Second Amended Complaint is DISMISSED WITH PREJUDICE as to Defendants Nitin Mehta, Centennial Surety Associates, and Michael Schendel.

It is SO ORDERED.

Alexandria, Virginia
September 10, 2021

/s/

Rossie D. Alston, Jr.
United States District Judge